IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA *ex rel.* JAMES
JUDD, M.D., the DISTRICT of COLUMBIA *ex rel.*
JAMES JUDD, M.D., CALIFORNIA *ex rel.* JAMES
JUDD, M.D., CONNECTICUT *ex rel.* JAMES JUDD,
M.D., COLORADO *ex rel.* JAMES JUDD, M.D.;
DELAWARE *ex rel.* JAMES JUDD, M.D., FLORIDA
*ex rel.* JAMES JUDD, M.D., GEORGIA *ex rel.* JAMES
JUDD, M.D., HAWAII *ex rel.* JAMES JUDD, M.D.,
ILLINOIS *ex rel.* JAMES JUDD, M.D., INDIANA *ex
rel.* JAMES JUDD, M.D., LOUISIANA *ex rel.* JAMES
JUDD, M.D., MARYLAND *ex rel.* JAMES JUDD,
M.D., MASSACHUSETTS *ex rel.* JAMES JUDD,
M.D., MICHIGAN *ex rel.* JAMES JUDD, M.D.,
MINNESOTA *ex rel.* JAMES JUDD, M.D.,
MONTANA *ex rel.* JAMES JUDD, M.D., NEVADA
*ex rel.* JAMES JUDD, M.D., NEW HAMPSHIRE *ex
rel.* JAMES JUDD, M.D., NEW JERSEY *ex rel.*
JAMES JUDD, M.D., NEW MEXICO *ex rel.* JAMES
JUDD, M.D., NEW YORK *ex rel.* JAMES JUDD,
M.D., NORTH CAROLINA *ex rel.* JAMES JUDD,
M.D., OKLAHOMA *ex rel.* JAMES JUDD, M.D.,
RHODE ISLAND *ex rel.* JAMES JUDD, M.D.,
TENNESSEE *ex rel.* JAMES JUDD, M.D., TEXAS *ex
rel.* JAMES JUDD, M.D., VIRGINIA *ex rel.* JAMES
JUDD, M.D., WISCONSIN *ex rel.* JAMES JUDD,
M.D., CHICAGO CITY *ex rel.* JAMES JUDD, M.D.,
NEW YORK CITY, *ex rel.* JAMES JUDD, M.D.,
PHILADELPHIA CITY *ex rel.* JAMES JUDD, M.D.,
and JAMES JUDD, M.D., individually,

                               Plaintiffs

          v.

QUEST DIAGNOSTICS INCORPORATED,
                        Defendant

CASE NO.: *10 – 4914 (SRC)*

FILED *IN CAMERA* UNDER SEAL

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff-Relator James Judd, M.D. ("Relator"), by and through his undersigned

attorneys, KENNEY & McCAFFERTY, P.C., and OBERMAYER REBMANN MAXWELL & HIPPEL

LLP on behalf of the United States of America, the District of Columbia, City of Chicago, New

York City, and the City of Philadelphia, and the states of California, Connecticut, Colorado,

Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Louisiana, Maryland, Massachusetts,

Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Virginia and Wisconsin and individually, on his own behalf, alleges as follows for his Complaint against Defendant Quest Diagnostics Incorporated.

## I.   INTRODUCTION

1.      Referring a patient for diagnostic laboratory testing should be based primarily on medical judgment and not influenced by financial incentives.

2.      To be reimbursable under Medicare and Medicaid programs, the referral must be based upon a doctor's medical evaluation of a specific patient, and not on any financial incentives for the doctor.

3.      Congress enacted the Medicare and Medicaid Anti-Kickback Act, 42 U.S.C. § 1320a-7b, to remove financial incentives from the medical decision-making process.  The Patient Protection and Affordable Care Act, enacted March 23, 2010, codified long standing judge-made law that "a claim that includes items or services resulting from a violation of [the AKS] constitutes a false or fraudulent claim for purposes of the False Claims Act," and "a person need not have actual knowledge of [the AKS] or specific intent to commit a violation of [the AKS]." The Patient Protection and Affordable Care Act Sec. 6402 (f).

4.      Since before 2005, Quest has engaged in a business practice of distributing free supplies to licensed healthcare professionals, their medical practices and other health care providers (hereinafter collectively referred to as "Providers") with the intent to induce them to refer Medicare and Medicaid patients to Quest for diagnostic laboratory testing.

5.      Quest has done so pursuant to a business and marketing plan for increasing its share of the diagnostic laboratory testing market for patients covered by Medicare, Medicaid or other federally funded health insurance programs.

6.     Quest's routine distribution of free supplies, as well as free specimen transportation, creates a financial incentive for Providers to refer Medicare and Medicaid and other federal health insurance program patients to Quest for testing, as opposed to other diagnostic laboratories, in that Providers can be reimbursed: (a) for collecting specimens for laboratory testing without having to pay for the medical or office supplies needed for collection;  (b) Providers can be reimbursed for in-office testing procedures without having to pay for the test kits needed for such procedures.

7.     The Governments intend for their reimbursement to the Providers to include the cost of the supplies for collecting specimens and for testing.

8.     The Providers know that Quest will replenish the collection supplies and in office testing kits at no charge so that the Providers can continue to be reimbursed for such procedures.

9.     In addition, Quest sells substance abuse test kits to Providers, and performs diagnostic tests, at discounted prices which the Providers mark up when seeking reimbursement from private insurers.

10.     The business arrangements between Quest and the Providers introduce financial incentives into the Providers' referrals for diagnostic laboratory testing for a large population of Medicare and Medicaid and other federal health insurance program patients.

11.     The business arrangements between Quest and the Providers violate the Anti-Kickback Act.

12.     Relator James Judd, M.D. brings this qui tam action pursuant to 42 U.S.C. §3730(b) to recover damages and civil penalties from Quest on behalf of the United States of America: for submitting claims to Medicare and Medicaid and other federally funded health insurance programs in violation of the federal civil False Claims Act, 31 U.S.C. § 3729(a), as amended.

13.    Quest's acts also constitute violations of the following state and local false claims acts which cover state and local payments pursuant to Medicaid programs: the New York City False Claims Act, ( N.Y City Administrative Code §7-801 to §7-810); the City of Chicago False Claims Act. (Municipal Code of Chicago §1-22-010 to §1-22-060); the City of Philadelphia False Claims Provision (Philadelphia Munic. Code §19-3600 *et seq.*); the District of Columbia False Claims Act (DC ST § 2-308.14 *et seq.*); the California False Claims Act, (Cal. Gov't Code §§ 12650-12655); the Connecticut False Claims Act, (Chapter 319v, Sec. 17b-301a *et seq.*);the Colorado Medicaid False Claims Act (Co. Rev. Stat. §25.5-4-303, *et seq.*); the Delaware False Claims and Reporting Act (6 Del. C. § 1201 et seq.); the Florida False Claims Act (Fla. Stat. § 68.081 *et seq.*); the Georgia Medicaid False Claims Act (O.C.G.A. § 49-4-168 *et seq.*); the Hawaii False Claims Act (Haw. Rev. Stat. § 661-21 and Haw. Rev. Stat. § 378-61, et seq.); the Illinois Whistleblower and Reward Protection Act (740 Ill.Comp. Stat. § 175/1 *et seq.*); the Indiana False Claims Act (Burns Ind. Code Ann. § 5-11-5.5-1 *et seq.*); the Louisiana Medical Assistance Programs Integrity Law (La. Rev. Stat. Ann. § 46:437.1 *et seq.*); the Massachusetts False Claims Act (Mass.Gen. Laws Ann. 12 § 5A *et seq.*); the Michigan Medicaid False Claims Act (Mich. Comp. Laws § 400.601- 400.613); the Minnesota False Claims Act (Minn. Stat. § 15C.01 *et seq.*); the Montana False Claims Act, (Mont. Code Ann., § 17-8-401 *et seq.*); the Nevada False Claims Act (Nev. Rev. Stat. § 357.010 *et seq.*); the New Hampshire False Claims Act (N.H. Rev. Stat. Ann. § 167:61-a *et seq.*); the New Jersey False Claims Act (New Jersey Statutes 2A:32C -1 *et seq.;* ); the New Mexico Fraud Against Taxpayers Act (N.M. Stat. Ann. § 44-9-1); the New Mexico Medicaid False Claims Act, (N.M. Stat. Ann. §44-9-1 *et seq.); N.M.* Stat. Ann. § *27-14-1, et seq.*);  the New York False Claims Act (N.Y. C.L.S. St. Fin. § 187 *et seq.*); the North Carolina False Claims Act,(N.C. Gen. Stat §§1-605 *et seq.);* the Oklahoma Medicaid False Claims Act ( 63 Okla. Stat. § 5053); the State False Claims Act of Rhode Island (R.I. Gen. Laws § 91.1-3 *et seq.*); the Tennessee Medicaid False Claims Act (Tenn. Code Ann.§ 71-5-181

*et seq.*); the Texas Medicaid Fraud Prevention Law(Tex. Hum. Res. Code §36.002 *et seq.*); the Virginia Fraud Against Taxpayers Act (Va. Code Ann. § 8.01-216.1 *et seq.*); the Wisconsin False Claims for Medical Assistance Act (Wis. Stats. § 20.931 *et seq.*) and as of October 1, 2010, the Maryland False Claims Against State Health Plans and State Health Programs, (Annotated Code of Maryland, Subtitle 6 §§ 2-601 to 2-611).

14.      The aforementioned states, cities and the District of Columbia are hereinafter collectively referred to as the "Plaintiff States." The United States of America and the Plaintiff States are hereinafter collectively referred to as the "Government Plaintiffs."

II.      JURISDICTION AND VENUE

15.      This court has jurisdiction over the subject matter of this action: (i) pursuant to 31 U.S.C. §3732, which specifically confer jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§3729 and 3730; (ii) pursuant to 28 U.S.C. §1331, which confers federal subject matter jurisdiction; and (iii) pursuant to 28 U.S.C. §1345, because the United States is a plaintiff.

16.      Relator Judd has direct and independent knowledge of the information upon which the allegations are based and has voluntarily provided notice of this action to the government before filing this *qui tam* action.

17.      Relator Judd has previously provided to the Attorney General of the United States and to the United States Attorney for the District of New Jersey a disclosure statement summarizing known material evidence and information related to this Complaint, in accordance with the provisions of 31 U.S.C. §3730(b)(2). Relator Judd's disclosure statement is supported by material evidence.

18.      Simultaneous with the service of this complaint upon the Government Plaintiffs, Relator Judd will provide a relator statement.

19.      This court has jurisdiction over Defendant Quest under 31 U.S.C. §3732(a) because Quest can be found in, is authorized to transact business in, and is now transacting

business in this District.  In addition, acts proscribed by 31 U.S.C. §3729 have occurred in this District.

20.     Venue is proper in the District of New Jersey because Quest conducts business in this District and acts giving rise to this action occurred within this District.  For example, Quest operates a facility in Teterboro, NJ, and all of the Relator's lab tests are couriered by Quest from the Relator's office to the Teterboro facility twice a day.

III.     **PARTIES**

21.     Relator James Judd, M.D., is a citizen and resident of the Commonwealth of Pennsylvania.  He is board certified in family medicine, and he practices medicine through Hatboro Medical Associates located in Hatboro Pennsylvania. Relator James Judd M.D. brings this action on his own behalf and on behalf of the federal and state governments pursuant to 31 U.S.C. §3730(b)(1) for false and fraudulent claims submitted to federally-funded and state-funded government healthcare programs, including Medicare and Medicaid.

22.     Defendant Quest is a corporation that has been created under the laws of the State of Michigan with a principal place of business located at 444 Giddings Rd, Auburn Hills, MI, 48326.  Quest is a diagnostic testing laboratory that has a national network of laboratories in or near all major cities in the United States, and claims to provide testing for approximately 500,000 patients each day.  Quest further claims to serve fifty percent (50%) of the physicians and hospitals in the Unites States and over 90 million people covered by health plans and third-party insurers.

IV.     **FACTUAL AND REGULATORY BACKGROUND**

23.     The instant matter arises in principal part from a kickback scheme orchestrated by  Defendant Quest Diagnostics Incorporated, (hereinafter "Quest") to  induce licensed professionals, their medical practices and other health care providers (hereinafter collectively referred to as "Providers") to refer their patients to Quest for diagnostic testing, through the provision of free medical supplies and discounted testing fees and other remuneration, which

4493828                                             6

disqualifies Quest from participating in the Medicare and Medicaid program and makes it ineligible for reimbursement by the Government Plaintiffs. The kickback scheme began sometime before 2005 and continues to the present.

24.     In return for patient referrals, Quest provides laboratory collection supplies, test kits for in-office testing, and other medical and office supplies at no charge and agrees to perform substance abuse testing at discounted rates. Quest also locks in referrals by giving Providers free access to its patient database for purposes of ordering tests and reporting test results.

25.     The Anti-Kickback Act, 42 U.S.C. § 1320a-7b, makes it unlawful for a diagnostic testing laboratory to offer or pay any remuneration, in cash or in kind, to Providers to induce patient referrals that may be paid for by Medicare or Medicaid, or other government health program.

26.     As a result, Quest was not in compliance with the Anti-Kickback Act, making each and every claim that Quest submitted to Medicare and Medicaid for reimbursement during the period of the kick-back scheme false and fraudulent.

27.     Quest designed and structured the business arrangements between itself and the Providers.

28.     Quest knew that its marketing plan and business practices would necessarily result in the submission of claims by Providers for Medicare and Medicaid reimbursement that did not comply with the Anti-Kickback Act.

29.     Quest has also caused Providers to submit to the Government Plaintiffs false claims for (a) reimbursement of blood collection procedures they perform using non-safety needles provided by Quest at no charge, for which part of the reimbursed costs are the reasonable cost of safety needles that comply with OSHA's Bloodborne Pathogens Standards (29 CFR 1910.1030); and (b) reimbursement of in-office tests they perform using test kits

provided by Quest at no charge (including Strep Test Kits and Hemacult Kits), for which part of the reimbursed costs are the reasonable costs of such test kits.

30.     Quest knew that its marketing plan and business practices would necessarily result in the submission of claims by Providers for reimbursement of the reasonable costs of supplies for which the Providers did not pay because Quest provided them at no charge, thereby inflating the profits Providers received for the diagnostic procedures at issue.

31.     Quest willfully and knowingly engaged in the kickback schemes to induce physicians and other Providers to use Quest, rather than other laboratories, for diagnostic testing services.

### A.     THE MEDICARE PROGRAM

32.     Medicare is a federally funded health insurance program primarily benefiting the elderly.  Medicare was created in 1965 when Title XVIII of the Social Security Act was adopted.  Medicare, the nation's largest health insurance program, provides health insurance to people aged 65 and older, those who have end-stage kidney disease, and certain people with disabilities.

33.     Medicare offers health insurance protection for more than 40 million aged and disabled persons under two different programs: (a) The "original Medicare" program, (also referred to as "fee for- service Medicare,")  in which the beneficiaries obtain services through providers of their choice and Medicare makes payments for each service rendered (i.e., fee-for-service) or for each episode of care; and (b)Medicare+Choice program in which beneficiaries are enrolled in managed care organizations that  assume the risk for providing all covered services in return for a fixed monthly per capita payment.

34.     The Centers for Medicare and Medicaid Services (CMS) administer Medicare but much of the daily administration and operation of the Medicare program is managed through contracts with private insurance companies that operate as fiscal intermediaries.

35.     Medicare Part A covers hospitalization.  Medicare Part B covers physician services, diagnostics tests, certain pharmaceutical products, and other medical services not covered under Part A.

36.     "Medicare Carriers" are responsible for accepting and paying claims for reimbursement under Medicare Part B.  There are approximately 53 Medicare Carriers, some with multiple contracts, covering 56 jurisdictions.

B.     MEDICARE PAYMENTS TO LABORATORIES

37.     Medicare Part B is the largest payer of outpatient clinical laboratory services in the United States, paying approximately 29 percent of the nation's laboratory bill of $30 billion to $35 billion for inpatient and outpatient laboratory services.  In its December 2000 report, "Medicare Laboratory Payment Policy: Now and in the Future," the Institute of Medicine found that the Medicare Part B fee schedules for outpatient clinical laboratory services accounted for approximately one-third of Medicare spending for laboratory services in 1998, or 1.6 percent of the total annual Medicare budget.

38.     Each Medicare Carrier has a unique fee schedule for outpatient clinical laboratory tests in each jurisdiction that it covers.  The fee schedules were established pursuant to the Deficit Reduction Act of 1984, and are periodically updated for inflation as authorized by Congress.

39.     Payments pursuant to the fee schedules are limited by national fee caps, called National Limitation Amounts, which define the maximum amount a Medical Carrier may pay for a given test.  Currently, the national fee caps are set at 74 percent of the scheduled fee for each laboratory service.

40.     Pursuant to 42 U.S.C. §1395l (a) (1), Medicare Part B pays 100 percent of the lesser of the actual charge billed, the fee schedule amount, or the National Limitation Amount.

41.     Medicare Part B reimbursed laboratory services must be billed by the person performing the test.  When an outside laboratory performs a test on a referral from a Provider, only the laboratory may legally bill Medicare for the procedure.

42.     As a prerequisite to participating in the Medicare Program, Suppliers must expressly certify (or, through their participation in the Medicare Program, impliedly certify) their compliance with federal and state laws governing Medicare, including the federal Anti-Kickback Statute. Laboratories may enroll as Medicare suppliers using Form CMS-885B and sign a certification statement which states in part:

> 3.     I agree to abide by the Medicare laws, regulations and program instructions that apply to this supplier. ... I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations and program instructions (including but not limited to, the Federal anti-kickback statute and the Stark law), and on the supplier's compliance with all applicable conditions of participation in Medicare.

> 6.     I will not knowingly present or cause to be presented a false statement or fraudulent claim for payment by Medicare, and I will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

> My signature legally and financially binds this supplier to the law, regulations and program instructions of the Medicare program.

> If I become aware that any information in this application is not true, correct or complete, I agree to notify the Medicare fee-for-service contractor of this fact immediately.

## C.     MEDICARE PAYMENTS TO PHYSICIANS

43.     Medicare Part B reimburses physicians based on standardized procedure codes. For the most part, Medicare uses procedure codes developed by the American Medical Association known as Current Procedural Terminology® (CPT) codes to identify procedures for billing purposes.

44.     There are approximately 1,100 Current Procedural Terminology® (CPT) procedure codes that apply to laboratory medicine.

45.     For each procedure code, Medicare develops a resource-based relative value or Resource Based Relative Value Unit ("RBRVU") which is adjusted for regional differences.

46.     The RBRVU is determined by a methodology that combines the major categories of costs for a service -- the physician professional cost component, malpractice costs and practice expenses -- to produce a single relative value for that service.

47.     The Social Security Act, 42 U.S.C. §1848(c)(1)(B) defines "practice expense" as the portion of the resources used in furnishing the service that reflects general expenses, such as office rent, wages of personnel and equipment.  The Office of Inspector General for the Department of Health and Human Services determines whether Medicare payments for physician services performed by selected specialties are comparable to the actual expenses incurred by physicians in providing services and operating their practices.

48.     The payment level for any given procedure is then determined by multiplying the RBRVU value for the code by a conversion factor that takes into account regional and other variable cost factors.

49.     Physicians are paid for their services based on the lesser of their actual charge or the applicable resource-based relative value fee.  42 U.S.C. §1848(c)(1)(B).

50.     After the adoption of the Needlestick Safety and Prevention Act, and the regulations promulgated by OSHA pursuant thereto, CMS   has taken the increased costs associated with the use of safety needles into account for purposes of determining the resource-based relative value fees for certain procedures that require the use of safety needles pursuant to the Bloodborne Pathogens Standards (29 CFR 1910.1030).

51.     The procedure code used to report routine blood collection by venipuncture for Medicare reimbursement is 36415 (*Routine venipuncture for collection of specimen[s]).

52.     Codes have also been established for reimbursement of simple tests commonly performed in physician offices and other locations that are not subject to many of the regulatory requirements of the Clinical Laboratory Improvement Act (CLIA Waived Test Codes).

53.     The following CLIA waived tests are commonly performed in physician offices and are included in the laboratory fee schedule for which reimbursement may be obtained:

> 82270 OCCULT BLOOD
>
> 87880QW STREPTOCOCCUS  screen
>
> 87072QW CULTURE OR DIRECT BACTERIAL ID: each organism, by commercial kit, other than urine

54.     As a prerequisite to participating in the Medicare Program, providers must expressly certify (or, through their participation in the Medicare Program, impliedly certify) their compliance with federal and state laws governing Medicare, including the federal Anti-Kickback Statute. When becoming a participating provider, the Form CMS-885I that the provider signs contains a  certification statement which states in part:

> 1.     . . . If I become aware that any information in this application is not true, correct or complete, I agree to notify the Medicare fee-for-service contractor of this fact immediately.
>
> 4.     I agree to abide by the Medicare laws, regulations and program instructions that apply to me or to the organization listed in Section 4A of this application. … I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations and program instructions (including but not limited to, the Federal anti-kickback statute and the Stark law), and on the supplier's compliance with all applicable conditions of participation in Medicare.
>
> 8.     I will not knowingly present or cause to be presented a false statement or fraudulent claim for payment by Medicare, and I will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

4493828                                    12

### D.     THE MEDICAID PROGRAM

55.     Enacted in 1965, the Medicaid program, Title X of the Social Security Act, provides medical assistance for certain individuals and families with low incomes and resources.

56.     Medicaid is a jointly funded cooperative federal-state public assistance program serving needy families, children, and pregnant women, as well as the aged, blind, or disabled persons. Medicaid programs are administered by the states. 42 USC §1396a(a)(2).

57.     Federal support for Medicaid is significant. For example, the federal government provides 50% of the funding for Illinois Medicaid, the remaining 50% of funds is received from the state.

58.     Title XIX of the Social Security Act allows considerable flexibility within the States' Medicaid plans, and therefore, specific Medicaid coverage and eligibility guidelines vary from state to state.

59.     However, in order to receive federal matching funds, a state Medicaid program must meet certain minimum coverage and eligibility standards. A state must provide Medicaid coverage to needy individuals and families in five broad groups: pregnant women; children and teenagers; seniors; people with disabilities; and people who are blind. In addition, the state Medicaid program must provide medical assistance for certain basic services, including inpatient and outpatient hospital services.

60.     In many states, the Medicaid program pays for hospital services, doctor visits, prescriptions, home health services, nursing home care and other healthcare needs.

61.     The complexity and financial magnitude of federal and state health care programs, including the Medicare and Medicaid programs create the incentive and opportunity for pervasive fraud and abuse.

62.     As a prerequisite to participating in state Medicaid programs, providers must expressly certify (or, through their participation in the state-funded health care program, impliedly certify) their compliance with federal and state laws governing Medicaid, including the federal Anti-Kickback Statute.

E. OTHER FEDERALLY FUNDED HEALTH CARE PROGRAMS

63.     In addition to Medicare, the federal government reimburses a portion of the costs associated with several other health care programs that operate in similar ways to the Medicare program, including but not limited to (a) the Railroad Retirement Medicare Program, which furnishes Medicare coverage to retired railroad employees (The Railroad Retirement Act of 1974 at U.S.C.A. § 231, *et seq.*); (b) The Federal Employees Health Benefits Program, which provides health care coverage to federal employees, retirees and their dependents and survivors (5 USCA § 8901 *et seq.*); (c) Tri-Care (formerly CHAMPUS), which provides for care in civilian facilities for members of the uniformed services and their dependents (10 U.S.C.A. §§ 1701-1106); (d) The Civilian Health and Medical Program of the Department of Veterans Affairs (CHAMPVA), which is a comprehensive health care program in which the VA shares the cost of covered health care services and supplies with eligible beneficiaries (38 USC § 1781);(e) The Indian Health Service that provides health services to American Indians and Alaska Natives (42 U.S.C.A. § 2002 *et seq.*); and (f)State Legal Immigrant Assistance Grants that furnishes funds which several States use to pay for certain health services to legal immigrants (8 U.S.C.A. §1255A; 45 CFR 402.10). These and other federally funded health care programs are collectively referred to as "other federally funded health insurance programs."

F.      THE SIGNIFICANCE OF THE NEEDLESTICK SAFETY AND PREVENTION ACT

64.     Laboratories and physician's offices are required to comply with the Needlestick Safety and Prevention Act.

65.     Pursuant to the Needlestick Safety and Prevention Act, the Occupational Health and Safety Administration (OSHA) promulgated the Bloodborne Pathogens Standards (29 CFR 1910.1030) to reduce the number of needlestick injuries in the workplace

66.     The Bloodborne Pathogens Standards obligate clinical laboratories, hospitals and other employers in the healthcare field to use safer medical devices whenever feasible.  While OSHA recognizes that there is not one medical device that is necessarily safer than another nor appropriate in all situations, "employers must consider and implement devices that are appropriate, commercially available, and effective."

67.     The Bloodborne Pathogens Standards effectively requires the use of safety needles to collect blood.

68.     As a result, non-safety needles may not be lawfully distributed for blood collection.

69.     Various states have laws regulating the distribution of needles.  In such states, needles may not be lawfully distributed for blood collection unless the distributor complies with applicable state regulations.

70.     Quest is not authorized by the laws of the following Plaintiff States, For example, to distribute hypodermic needles and other needles: CAL. BPC. CODE § 4140 of the California Code; Chapter 94C: Section 27 of the Massachusetts Codes; Section 151.40 Subsection 1 of the Minnesota Code.

G.     THE FEDERAL AND STATE FALSE CLAIMS ACTS

71.     Numerous state and federal statutes and regulations serve to prevent fraud and abuse in the Medicaid and Medicare programs. Defendant Quest, in conjunction with the Provider, has violated these statutes and regulations and has thereby defrauded the government and private health insurance payors of tens of millions of dollars.

72.     The federal False Claims Act, 31 U.S.C. §§ 3729 to 3733, provides, in pertinent part, that:

(a)     Liability for certain acts.

(1)     In general.  Subject to paragraph (2), any person who--

(A)     Knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

(B)     Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

(C)     conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

is liable to the United States Government for a civil penalty ... plus e times the amount of damages which the Government sustains because of the act of that person.

(b)     Definitions.  For purposes of this section –

(1)     the terms "knowing" and "knowingly –

(A)     mean that a person, with respect to information--

(i)     has actual knowledge of the information;

(ii)    acts in deliberate ignorance of the truth or falsity of the information; or

(iii)   acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

31 U.S.C. § 3729(a) and (b).

73.     The False Claims Act imposes liability on any person who knowingly presents or causes a false or fraudulent claim to be presented for payment, or to make or use a false record or statement to get a false or fraudulent claim paid by the government. 31 U.S.C. §3729(a)(1)(A) and (B).

74.     The False Claims Act is violated not only by a person who makes a false statement or a false record to get the government to pay a claim, but also by one who engages

4493828                                    16

in a course of conduct that causes the government to pay a false or fraudulent claim for money.

75. To cover the Plaintiff States' share of Medicaid programs, the Plaintiff States enacted laws modeled after the Federal False claims Act which are listed in paragraph 13, above (collectively the "Plaintiff States' False Claims Acts").

76. The Plaintiff States' False Claims Acts mirror the broad proscriptions of the Federal False Claims Act, including those set forth in §§3729(a)(1)(A), (B) and (C). The Plaintiff States' False Claims Acts have liability provisions similar to those in the Federal False Claims Act.

### H.   THE MEDICARE AND MEDICAID ANTI-KICKBACK STATUTE

77. In response to fraudulent and abusive practices in Medicare and Medicaid-funded programs, Congress added the Anti-Kickback Act ("AKA") to the Social Security Act in 1977.

78. The AKA makes it a felony to knowingly and willfully offer or pay any remuneration (including any kickback, bribe or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person:

> (A) to refer an individual for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, 42 U.S.C. § 1320a-7b(b)(2)(A); or
>
> (B) to purchase, lease, or order any good or service or item for which payment may be made in whole or in part under a Federal health care program, 42 U.S.C. § 1320a-7b(b)(2)(B).

79. The AKA also makes it a felony to knowingly and willfully make, or cause to be made, any false statement or representation of a material fact in any application for any payment under a Federal healthcare program. 42 U.S.C. §1320a-7b(a)(1).

80. A violation of the AKA is also a violation of the Federal False Claims Act. 42 U.S.C. §1320a-7b(g).

81.    Under the AKA, diagnostic testing laboratories may not offer or pay any remuneration, in cash or in kind, to induce patient referrals that may be paid for by Medicare or Medicaid, or other government health programs.  Violations are punishable by civil monetary penalties, criminal penalties, and exclusion from the Medicare and Medicaid programs.

82.    The AKA reaches all fraudulent attempts to cause the government to pay claims it owes no obligation to pay, including claims that are the byproduct of the payment of illegal remuneration.

83.    Quest is liable under the Federal False Claims Act and analogous state and municipal laws, because it has knowingly presented claims to Medicare and Medicaid for reimbursement that violate the Anti-Kickback Act and its state equivalents, and it has knowingly structured business arrangements with Providers that lead the Providers to present claims to Medicare and Medicaid for reimbursement that also violate the Anti-Kickback Act and its state law equivalents.

I    THE ILLICIT KICKBACK ARRANGEMENT BETWEEN QUEST AND
THE PROVIDERS

84.    The Providers collectively care for and treat  thousands of  patients who are covered by a federally funded health insurance program, including but not limited to the original Medicare "fee for service" Program or the Medicare+Choice program or the Medicaid program, or other federally funded health insurance programs, and thousands of other patients who are covered by private insurance.

85.    It is well recognized in the health care industry that the Provider, not the patient, generally selects the clinical laboratory where diagnostic tests will be performed.  This creates an incentive for diagnostic laboratories to establish relationships with the Providers to lock in referrals of patients, including patients covered by Medicare and Medicaid and other federally funded health insurance programs.

86.     In order to establish a relationship with the Providers and to lock in Medicare and Medicaid patient referrals, Quest structures business arrangements with Providers, pursuant to which Quest supplies the Provider with medical supplies without charge, installs equipment in their offices without charge, and performs substance abuse testing for the Providers at discounted rates.

87.     In furtherance of the kickback scheme, Quest enters into a two page form titled "Re: Clinical Laboratory Testing Service" in which Quest represents to the Provider that it will provide the "highest quality testing and services in the industry" (hereinafter Testing Service Agreement').

88.     In the Testing Service Agreement, Quest represents to the Provider that it will "fully comply with all applicable laws, rules and regulations."

89.     Quest supplies Providers with durable medical supplies at no charge, including but not limited to, non-safety needles, Band-Aids, cotton balls, specimen containers and test tubes and diagnostic testing materials, including but not limited to, Strep Test Kits (Kit: Strep A. Osom 50 Test Kit, includes Controls, Swap) Hemacult Kits (Hemacult Sensa DispensPak Plus) and Pap Smear Test Kits (Female Probe Tec CT/NG, Wet Swab, Collection Kit for Endocervical Specimen).

90.     Attached to the Testing Service Agreement is a schedule titled "Pricing Terms" in which Quest agrees to provide the Providers with clinical laboratory testing services for their patients at a discounted rate.

91.     Quest also offers providers a Substance Abuse Testing Agreement that provides the Provider with certain Medical Review Officer services, including but not limited to substance abuse panel services, that offers Providers clinical laboratory testing services at a discounted rate for each test that can be marked up when the Provider seeks reimbursement from the employer.

92.     Included in the Substance Abuse Testing Agreement is the promise that Quest "will provide to Purchaser certain specimen collection supplies as Quest Diagnostics deems proper to be used exclusively for ordering testing performed by Quest Diagnostics."

93.     The Testing Services Agreement and the Substance Abuse Testing Agreement have no fixed term and are terminable without cause upon 30 days' notice. The free medical supplies, the in-office test kits, the computer software and hardware, and the fax machines that Quest distributes to the Providers fit squarely within the AKA's definition of remuneration.

94.     Quest's arrangements with Providers violate the AKA. As a result, the claims that Quest submits for reimbursement of tests violate the Federal and State False Claims Acts, because Quest's submissions are made pursuant to an express and/or an implied certification of compliance with the Anti-Kickback Statute that are false. Payment of Quest's reimbursement claims by the Government Plaintiffs was conditioned on Quest's implied and/or express certification of compliance with the Anti-Kickback Statute.

95.     In direct violation of the AKA, Quest has provided substantial remuneration to Providers in the form of valuable medical supplies and equipment to induce the Providers to make patient referrals to Quest.

96.     The AKA, 42 U.S.C. §1320a-7b(b)(3), provides exceptions or "safe harbors" for certain practices that are not deemed to involve kickbacks, including but not limited to the following:

> (A)     a discount or other reduction in price obtained by a provider of services ... under a Federal health care program, if the reduction in price is properly disclosed and appropriately reflected in the costs claimed or charges made by the provider ... .
>
> (E)     any payment practice specified by the Secretary in regulations promulgated pursuant to section 14a of the Medicare and Medicaid Patient and Program Protection Act of 1987 or in regulations under section 1860D-3(e)(6) [42 U.S.C. §1395w-104(e)(6)];

(F)     any remuneration between an organization and an
individual or entity providing items or services, or a
combination thereof, pursuant to a written agreement
between the organization and the individual or entity if
the organization is an eligible organization under section
1876 [42 U.S.C. §1395mm] or if the written agreement,
through a risk-sharing arrangement, places the individual
or entity at substantial risk for the cost or utilization of the
items or services, or a combination thereof, which the
individual or entity is obligated to provide.

97.     The arrangements between Quest and the Providers do not fit into any of the
safe harbors of the Anti-Kickback Statute for the following reasons:

(a)     the Testing Service Agreement and the Substance Abuse
Testing Agreement do not cover (a) all the durable
medical supplies which Quest provided free of charge,
including, but not limited to, non-safety needles, Band-
Aids, cotton balls, specimen containers and test tubes, and
(b) all the diagnostic testing materials which Quest
provided free of charge, including, but not limited to,
Strep Test Kits (Kit: Strep A. Osom 50 Test Kit, includes
Controls, Swap) Hemacult Kits (Hemacult Sensa
DispensPak Plus) and Pap Smear Test Kits (Female Probe
Tec CT/NG, Wet Swab, Collection Kit for Endocervical
Specimen).

(b)     the lease or rental of the computer software and
hardware, printers, printer supplies, fax machine, and
fax line are provided to the Provider at no charge
pursuant to a Subscriber Services Agreement, and are not
set at fair market value.

(c)     the supplies that Quest distributes to the Providers are
provided without charge and are not set at fair market
value.

(d)     the free supplies that Quest distributes to the Providers are
diverse in type and large in number, many of which, such
as cotton balls, swabs and band-aids, can be used
generally in the Providers' offices for purposes other than
blood collection and collection of other specimens.

(e)     the non-safety needles supplied by Quest could not have
been supplied for the purpose of blood collection, because
they do not comply with the Bloodborne Pathogens
Standards, and because Quest could not lawfully
distribute needles for any purpose in the plaintiff states.

(f) the Testing Service Agreement and Substance Abuse Testing Agreement are for less than one year, because they allow either party to "discontinue this agreement for any reason upon thirty days prior notice with or without cause."

### J. THE SUBMISSION OF FALSE CLAIMS BY QUEST

98. Quest distributes free supplies, including needles and in-office test kits, and sells discounted substance abuse test kits to the Providers, and performs discounted diagnostic tests with the intent to induce Providers to refer patients to Quest, including patients covered by Medicare, Medicaid and other federally funded health insurance programs.

99. Quest also provides Providers with free fax lines, printers, and printer supplies, such as paper and toner.

100. Compliance with the AKA, as well as all other relevant laws and regulations, is a condition precedent for a Medicare and Medicaid service provider to lawfully seek reimbursement from the Medicare or Medicaid program for goods and services provided to Medicaid beneficiaries, or from other federally funded health insurance programs. Thus, as a matter of law, procedures performed in violation of the AKA are ineligible for government reimbursement.

101. Quest violated 42 U.S.C. §§1320(a)-7b(A) when it structured business arrangements with Providers pursuant to which it provided remuneration to the Providers in exchange for referring patients covered by Medicare and Medicaid or other federally funded health insurance programs to Quest for diagnostic laboratory testing.

102. Quest obligated itself to comply with the AKA in its applications for enrollment and various agreements to participate in Federal and state medical assistance programs and in its submission of claims to Medicare and Medicaid or other federally funded health insurance programs. Quest expressly and/or impliedly certified that it would comply with all relevant laws and regulations, including the AKA. Quest knowingly submitted claims for payment by Medicare and Medicaid and other federally funded health insurance programs pursuant to a

false certification that it was in compliance with the AKA. Quest knew at the time that each such claim was ineligible for reimbursement.

103. Although "safe harbor" regulations exist to protect certain relatively innocuous and even beneficial commercial arrangements, no such provision protects the remuneration paid to the Providers by Quest. One reason for these payments not being protected activity is that the benefits of the unlawful payments were not passed on to the government (e.g. through disclosure of Quest's status as a supplier), nor was the existence of those payments disclosed.

104. Quest holds itself out as providing laboratory testing for approximately 500,000 patients each day and thousands of which are beneficiaries of Medicare or Medicaid or other federally funded health insurance programs. Therefore, Quest laboratory facilities make millions of claims to the government, for at least tens of millions of dollars annually, for diagnostic laboratory testing.

### K.    CAUSING THE SUBMISSION OF FALSE CLAIMS BY PROVIDERS

105. Quest has knowingly structured business arrangements with Providers that led and continue to lead Providers to present claims to Medicare and Medicaid and other federally funded health insurance programs that Quest knew would violate the AKA and its state law equivalents.

106. Quest used standardized form contracts, order forms, price lists and oral representations to structure such business arrangements with Providers. Quest presented Relator with standardized form agreements that were created or last revised in 6/05.

107. Quest represented that it would fully comply with all applicable laws, rules and regulations in the services it provided and that it would distribute the supplies that it deemed proper, leading the Relator and other Providers to believe that the business arrangements and practices that Quest structured and the supplies that Quest distributed were in compliance with all applicable laws.

108. Quest has violated 42 U.S.C. §1320a-7b(a)(1) by knowingly structuring business arrangements and engaging in business practices with Providers that led and continue to lead Providers to present claims to Medicare, Medicaid and other federally funded health insurance programs for the collection of specimens for testing by Quest and for the in-office testing of patients using kits supplied by Quest free of charge, which claims were submitted pursuant to implied and/or express certifications of compliance with the AKA that Quest knew to be false.

109. During the period May 29, 2007 to present, Relator's practice performed approximately 4,950 venipunctures for Medicare and Medicaid patients. In-office venipuncture procedures were performed for the Relator's patients on a daily basis using needles that Quest provided to the Relator free of charge, and the associated blood specimens were picked up by Quest, free of charge, approximately two times per day.

110. As a result of Quest's business practices and representations, during the period May 29, 2007 to present, the Relator submitted approximately 4950 claims to Medicare for in office venipuncture services that were provided to a Medicare patient using blood collection supplies that Quest provided to the Plaintiff without charge, for which the Plaintiff was reimbursed $3.00 by Medicare.

111. As a result of Quest's business practices and representations, during the period May 29, 2007 to present, the Relator submitted approximately 320 claims to Medicare and Medicaid for reimbursement for the in-office hemacult testing of Medicare patients using a hemacult test that Quest provided to the Plaintiff without charge, for which the Plaintiff was reimbursed $4.66 by Medicare.

112. As a result of Quest's business practices and representations, during the period May 29, 2007 to present, the Relator submitted approximately 18 claims to Medicare for in-office streptococcus testing of a Medicare patient using a strep test that Quest provided to the Plaintiff without charge, for which the Plaintiff was reimbursed $15.77 by Medicare.

## L.   ALTERNATIVE THEORY OF FALSE PROVIDER CLAIMS

113.   In the alternative, Quest violated 42 U.S.C. §1320a-7b(a)(1) by knowingly structuring business arrangements with Providers that led and continue to lead Providers to submit false claims to the Government Plaintiffs for reimbursement of supply costs which the Providers did not incur because they used supplies that Quest provided at no charge.

114.   When the Government Plaintiffs reimburse Providers' for blood collection services, they pay for the Providers' reasonable costs of purchasing blood collection supplies, including safety needles.

115.   The fees that Medicare reimburses the Providers for claims for venipunctures are $3.00.

116.   Because Quest routinely supplies needles, Band-Aids, cotton swabs, and other supplies to Providers free of charge, the Providers' claims for blood collection are false to the extent that they did not purchase the supplies for blood collection.

117.   After the adoption of the Needlestick Safety and Prevention Act, and the regulations promulgated by OSHA pursuant thereto, CMS has taken the increased costs associated with the use of safety needles into account for purposes of determining the resource-based relative value fees for certain procedures that require the use of safety needles pursuant to the Bloodborne Pathogens Standards (29 CFR 1910.1030). Quest induced Providers to submit false claims for venipuncture services through the distribution of free blood collection supplies, free in office testing kits, and the use of computers, fax machines, printers and other equipment that is provided to the Providers without charge.

118.   Because Quest routinely supplies non-safety needles to Providers, the Providers' claims for blood collection are false to the extent that they seek reimbursement for the reasonable costs of safety needles, which costs the Providers did not incur.

119.    It is estimated that the costs of safety needles has increased costs of the blood collection process by 140% of what the costs of using non-safety needles of the type that Quest supplies to the Providers.

120.    When the Government Plaintiffs reimburse Providers for in-office testing, they pay for the Providers' reasonable costs of purchasing in-office test-kits.

121.    Because Quest routinely supplies in-office test kits to Providers free of charge, the Providers' claims for in-office testing are false to the extent that they did not purchase the test kits.

122.    Quest knew that its marketing plan and business practices would cause the Providers to submit false claims to the Government Plaintiffs for reimbursement of procedures for which the resource-based relative value fee includes the reasonable cost of supplies for such procedures.  Quest knew that its marketing plan and business practices would necessarily result in the submission of claims by Providers for reimbursement of the reasonable costs of supplies that Quest provided at no charge.

## V. CLAIMS FOR RELIEF

### Count One

#### False Claims Act, 31 U.S.C. §3729 (a)(1)(A)
#### Presenting or Causing to Be Presented False Claims

123.    Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

124.    This is a civil action brought by Dr. Judd in the name of the United States under the *qui tam* provisions of 31 U.S.C. §3730 for Quest's violation of 31 U.S.C. §3729 *et seq.*

125.    Quest structured arrangements with Providers pursuant to which Quest distributed and distributes specimen collection supplies and other medical supplies to Providers at no charge and sold substance abuse test kits to Providers at substantial discounts with the intent to induce the Providers to refer patients to Quest for testing.

126.   Quest concealed and conceals from the United States Government the fact that it has distributed and continues to distribute free supplies and discounted test kits to Providers with the intent to induce the Providers to refer patients to Quest for testing.

127.   Quest has submitted claims to be paid for diagnostic testing under Medicare, Medicaid, and other federally funded health insurance programs, which claims arose from arrangements between Quest and Providers that violated the Anti Kickback Statute.

128.   Quest structured business relationships with Providers which naturally and necessarily led many Providers to submit claims to Medicare and Medicaid for specimen collection and in-office testing, which procedures Quest knew arose as a by-product of a kickback arrangement in violation of 42 U.S.C. §1320a-7b(b)(2).

129.   Quest represented that it would fully comply with all applicable laws, rules and regulations in the services it provided and that it would distribute the supplies that it deemed proper, leading many of the Providers to believe that the business arrangements and practices that Quest structured and the supplies it distributed were in compliance with all applicable laws.

130.   At all times relevant and material to this Complaint, Quest knew that its marketing plan and business practices would necessarily result in the submission of claims by Providers to be paid for specimen collection and in-office testing procedures under Medicare, Medicaid, and other federally funded health insurance programs, which claims arose from arrangements between Quest and the Providers that violated the Anti Kickback Statute, and/or sought reimbursement for the cost of supplies for which the Providers did not pay.

131.   By virtue of the above acts, Quest knowingly presented or caused to be presented, false or fraudulent claims to the United States Government for payment or approval, and continues to do so at the present time, directly or indirectly, to officers, employees, or agents of the United States, in violation of 31 U.S.C. § 3729(a)(1)(A).

132.    As Quest's marketing plan and business practices extend throughout the country in states where government reimbursement rates make such fraud lucrative for the Quest, the amounts of the false or fraudulent claims submitted to the United States Government were material.

133.    The United States Government, being unaware of the falsity or fraudulence of the statements, records, or claims caused by, made, and submitted by Quest, have approved and paid the false or fraudulent claims.  But for the knowing and intentional conduct of Quest, the false claims would not have been submitted.  But for the knowing and intentional conduct of Quest, the United States would not have reimbursed Providers for the false claims.

134.    From at least 2005 to the date of this Complaint, by reason of the conduct described above, the government has been damaged in an amount that is believed to be in excess of several millions of dollars.

### Count Two

### False Claims Act, 31 U.S.C. §3729 (a)(1)(B)
### Creation or Use of False Statements or Records Material to a False Claim

135.    Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

136.    This civil action is brought by Dr. Judd in the name of the United States under the *qui tam* provisions of 31 U.S.C. §3730 for Quest's violations of 31 U.S.C. §3729 (a)(l) (B).

137.    By virtue of the above-described acts, among others, Defendant knowingly created or caused to be created, made, or used material false records or statements to get false claims to be paid by the United States.

138.    Quest structured business relationships with Providers which naturally and necessarily led many Providers to submit claims to Medicare and Medicaid and other federally funded health insurance programs for specimen collection and in-office testing, which

procedures Quest knew arose as a by-product of a kickback arrangement in violation of 42 U.S.C. §1320a-7b(b)(2).

139.   Quest represented that it would fully comply with all applicable laws, rules and regulations in the services it provided and that it would distribute the supplies that it deemed proper, leading many of the Providers to believe that the business arrangements and practices that Quest structured and the supplies it distributed were in compliance with all applicable laws.

140.   At all times relevant and material to this Complaint, Quest knew that its marketing plan and business practices would necessarily result in the creation, making, or use of material false records or statements to get false claims to be paid by the United States to Providers for specimen collection and in-office testing procedures under Medicare, Medicaid, and other federally funded health insurance programs.

141.   At all times relevant and material to this Complaint, Quest knew that its marketing plan and business practices would necessarily result the creation, making, or use of material false records or statements to get false claims to be paid by the United States to Quest for diagnostic testing under Medicare, Medicaid, and other federally funded health insurance programs.

142.   By its conduct, Quest knowingly created and caused to be created material false statements and records to be made or used, and material facts to be omitted, to induce the United States Government to approve and pay false and fraudulent claims.

143.   The United States Government, being unaware of the falsity or fraudulence of the statements, records or claims which Quest caused to be made, used or presented, approved and paid the false or fraudulent claims for diagnostic testing performed by Quest and for specimen collection procedures and in-office testing performed by Providers.

144.    As Quest's marketing plan and business practices extend throughout the country, the amounts of the false or fraudulent claims submitted to the United States Government were material.

145.    From at least 2005 to the date of this Complaint, by reason of the conduct described above, the government has been damaged in an amount that is believed to be in excess of several millions of dollars.

## Count Three

### False Claims Act, 31 U.S.C. §3729 (a)(1)(C)
### Conspiracy

146.    Relator restates and incorporates each and every allegation above as if the same were fully set forth herein. To the extent that the allegations in Count Three are inconsistent with other allegations pled in the Complaint, Count Three is pled in the alternative.

147.    This civil action is brought by Dr. Judd in the name of the United States under the *qui tam* provisions of 31 U.S.C. §3730 for Quest's violations of 31 U.S.C. §3729 (a)(l)(C).

148.    At all times relevant and material to this Complaint, Quest distributed and distributes specimen collection supplies, in–office test kits, and other medical supplies to Providers at no charge, in violation of the Anti Kickback Statute, with the intent of improperly inducing increased business and profits.

149.    At all times relevant and material to this Complaint, Quest entered into agreements with certain Providers in which Quest and certain Providers agreed to violate the False Claims Act by submitting claims for payment under Medicare, Medicaid, and other federally funded health insurance programs which arose from arrangements between Quest and certain Providers that violated the Anti Kickback Statute.

150.    At all times relevant and material to this Complaint, Quest took action in furtherance of those conspiracies and executed those agreements, providing kickbacks and inducements in violation of the False Claims Act.

151.    By its conduct, Quest knowingly caused false statements and records to be made or used, and material facts to be omitted, to induce the United States Government to approve and pay false and fraudulent claims.

152.    The United States Government, unaware of Quest's illegal agreements and its conduct, has approved and paid false or fraudulent claims for reimbursement, whereby the Government has reimbursed Quest on its claims for the laboratory services it provided and it reimbursed certain Providers on its claims for, among other things, the reasonable costs of supplies for which the Providers did not pay, including the reasonable costs of safety needles that Quest did not supply.

153.    The United States Government, being unaware of the falsity of the claims made by Quest and certain Providers, has approved and paid false or fraudulent claims, whereby the Government has reimbursed Quest for the laboratory services it provided and it reimbursed certain Providers for the claims they submitted, including but not limited to, the blood collection procedures performed with substandard and unsafe needles supplied by Quest.

154.    As Quest's marketing plan and business practices extend throughout the country, the amounts of the false or fraudulent claims submitted to the United States Government were material.

### Count Four

### California False Claims Act
### Cal Gov't Code §12651(a)(1)-(3)

155.    Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

156.    This is a claim for treble damages and penalties under the California False Claims Act.

4493828

157.    By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the California State Government for payment or approval under Medicaid and other health programs.

158.    By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the California State Government to approve and pay such false and fraudulent claims.

159.    The California State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that otherwise would not have been allowed.

160.    By reason of the defendant's acts, the State of California has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

161.    The State of California is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by defendant.

## Count Five

### Delaware False Claims and Reporting Act
### 6 Del C. §1201(a)(1)-(3)

162.    Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

163.    This is a claim for treble damages and penalties under the Delaware False Claims And Reporting Act.

164.    By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the Delaware State Government for payment or approval under Medicaid and other health programs.

165.    By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Delaware State Government to approve and pay such false and fraudulent claims.

166.    The Delaware State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that otherwise would not have been allowed.

167.    By reason of the defendant's acts, the State of Delaware has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

168.    The State of Delaware is entitled to the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by defendant.

Count Six

**Florida False Claims Act**
**Fla. Stat. Ann. §68.082(2)**

169.    Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

170.    This is a claim for treble damages and penalties under the Florida False Claims Act.

171.    By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the Florida State Government for payment or approval under Medicaid and other health programs.

172.    By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Florida State Government to approve and pay such false and fraudulent claims.

173.   The Florida State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that otherwise would not have been allowed.

174.   By reason of the defendant's acts, the State of Florida has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

175.   The State of Florida is entitled to the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by defendant.

### Count Seven

### Hawaii False Claims Act
### Haw. Rev. Stat. §661-21 and Haw. Rev. Stat. § 378-61, et seq.

176.   Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

177.   This is a claim for treble damages and penalties under the Hawaii False Claims Act.

178.   By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the Hawaii State Government for payment or approval under Medicaid and other health programs.

179.   By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Hawaii State Government to approve and pay such false and fraudulent claims.

180.   The Hawaii State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that otherwise would not have been allowed.

181.   By reason of the defendant's acts, the State of Hawaii has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

182.    The State of Hawaii is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by defendant.

Count Eight

Illinois Whistleblower Reward And Protection Act<br/>740 Ill. Comp. Stat. §175/3(a)(1)-(3)

183.    Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

184.    This is a claim for treble damages and penalties under the Illinois Whistleblower Reward and Protection Act.

185.    By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the Illinois State Government for payment or approval under Medicaid and other health programs.

186.    By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Illinois State Government to approve and pay such false and fraudulent claims.

187.    The Illinois State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that otherwise would not have been allowed.

188.    By reason of the defendant's acts, the State of Illinois has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

189.    The State of Illinois is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by defendant.

### Count Nine

### Massachusetts False Claims Law
### Mass. Gen. Laws ch. 12 §5A

190.    Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

191.    This is a claim for treble damages and penalties under the Massachusetts False Claims Law.

192.    By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the Massachusetts State Government for payment or approval under Medicaid and other health programs.

193.    By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Massachusetts State Government to approve and pay such false and fraudulent claims.

194.    The Massachusetts State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that otherwise would not have been allowed.

195.    By reason of the defendant's acts, the State of Massachusetts has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

196.    The State of Massachusetts is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by defendant.

### Count Ten

### Minnesota False Claims Act
### Minn. Stat. § 15C.01 *et seq.*

197.    Relator restates and incorporates each and every allegation above as if the same were set forth herein.

4493828

198.    This is a claim for treble damages and penalties under the Minnesota False Claims Act.

199.    By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the Minnesota State Government for payment or approval under Medicaid and other health programs.

200.    By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Minnesota State Government to approve and pay such false and fraudulent claims.

201.    The Minnesota State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that otherwise would not have been allowed.

202.    By reason of the defendant's acts, the State of Minnesota has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

203.    The State of Minnesota is entitled to the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by defendant.

Count Eleven

Nevada False Claims Act
Nev. Rev. Stat. Ann. §357.010

204.    Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

205.    This is a claim for treble damages and penalties under the Nevada False Claims Act.

206.    By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the Nevada State Government for payment or approval under Medicaid and other health programs.

207.    By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Nevada State Government to approve and pay such false and fraudulent claims.

208.    The Nevada State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that otherwise would not have been allowed.

209.    By reason of the defendant's acts, the State of Nevada has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

210.    The State of Nevada is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by defendant.

### Count Twelve

### New Mexico Medicaid False Claims Act
### N.M. Stat. Ann. §27-14-1 et seq.

211.    Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

212.    This is a claim for treble damages and penalties under the New Mexico Medicaid False Claims Act and the New Mexico Fraud Against Taxpayers Act.

213.    By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the New Mexico State Government for payment or approval under Medicaid and other health programs.

214.    By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the New Mexico State Government to approve and pay such false and fraudulent claims.

215.   The New Mexico State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that otherwise would not have been allowed.

216.   By reason of the defendant's acts, the State of New Mexico has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

217.   The State of New Mexico is entitled to civil penalties for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by defendant.

### Count Thirteen

### New Mexico Fraud Against Taxpayers Act
### N.M. Stat. Ann. §44-9-1 et seq.

218.   Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

219.   This is a claim for treble damages and penalties under the New Mexico Medicaid False Claims Act and the New Mexico Fraud Against Taxpayers Act.

220.   By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the New Mexico State Government for payment or approval under Medicaid and other health programs.

221.   By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the New Mexico State Government to approve and pay such false and fraudulent claims.

222.   The New Mexico State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that otherwise would not have been allowed.

223.   By reason of the defendant's acts, the State of New Mexico has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

4493828

224.    The State of New Mexico is entitled to civil penalties for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by defendant.

### Count Fourteen

### North Carolina False Claims Act
### N.C. Gen. Stat. §§1-605 *et seq.*

225.    Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

226.    This is a claim for treble damages and penalties under the North Carolina False Claims Act.

227.    By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the North Carolina State Government for payment or approval under Medicaid and other health programs.

228.    By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the North Carolina State Government to approve and pay such false and fraudulent claims.

229.    The North Carolina State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that otherwise would not have been allowed.

230.    By reason of the defendant's acts, the State of North Carolina has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

231.    The State of North Carolina is entitled to the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by defendant.

## Count Fifteen

### Tennessee Medicaid False Claims Act
### Tenn. Code Ann. §71-5-182(a)(1)

232.    Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

233.    This is a claim for treble damages and penalties under the Tennessee Medicaid False Claims Law.

234.    By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the Tennessee State Government for payment or approval under Medicaid and other health programs.

235.    By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Tennessee State Government to approve and pay such false and fraudulent claims.

236.    The Tennessee State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that otherwise would not have been allowed.

237.    By reason of the defendant's acts, the State of Tennessee has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

238.    The State of Tennessee is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by defendant.

## Count Sixteen

### Texas Medicaid Fraud Prevention Law
### Tex. Hum. Res. Code Ann. §36.002

239.    Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

240.   This is a claim for treble damages and penalties under the Texas Medicaid Fraud Prevention Law.

241.   By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the Texas State Government for payment or approval under Medicaid and other health programs.

242.   By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Texas State Government to approve and pay such false and fraudulent claims.

243.   The Texas State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that otherwise would not have been allowed.

244.   By reason of the defendant's acts, the State of Texas has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

245.   The State of Texas is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by defendant.

### Count Seventeen

### Virginia Fraud Against Taxpayers Act
Va. Code Ann. §8.01-216.3(a)(1)-(3)

246.   Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

247.   This is a claim for treble damages and penalties under the Virginia Fraud Against Taxpayers Act.

248.   By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the Virginia State Government for payment or approval under Medicaid and other health programs.

249.    By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Virginia State Government to approve and pay such false and fraudulent claims.

250.    The Virginia State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that otherwise would not have been allowed.

251.    By reason of the defendant's acts, the State of Virginia has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

252.    The State of Virginia is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by defendant.

### Count Eighteen

### District of Columbia False Claims Act
### D.C. Code Ann. § 2-308.14 (a)(1)-(3), (7)

253.    Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

254.    This is a claim for treble damages and penalties under the District of Columbia False Claims Act.

255.    By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the District of Columbia Government for payment or approval under Medicaid and other health programs.

256.    By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the District of Columbia Government to approve and pay such false and fraudulent claims.

257.   The District of Columbia Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that otherwise would not have been allowed.

258.   By reason of the defendant's acts, the District of Columbia has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

259.   The District of Columbia is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by defendant.

### Count Nineteen

### Georgia False Medicaid Claims Act
O.C.G.A. §§ 49-4-168 et seq.

260.   Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

261.   This is a claim for treble damages and penalties under the Georgia False Medicaid Claims Act.

262.   By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the Georgia State Government for payment or approval under Medicaid and other health programs.

263.   By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Georgia State Government to approve and pay such false and fraudulent claims.

264.   The Georgia State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that otherwise would not have been allowed.

265.   By reason of the defendant's acts, the State of Georgia has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

266.    The State of Georgia is entitled to the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by defendant.

### Count Twenty

### Indiana False Claims and Whistleblower Protection Act
### I.C. 5-11-5.5

267.    Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

268.    This is a claim for treble damages and penalties under the Indiana False Claims and Whistleblower Protection Act.

269.    By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the Indiana State Government for payment or approval under Medicaid and other health programs.

270.    By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Indiana State Government to approve and pay such false and fraudulent claims.

271.    The Indiana State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that otherwise would not have been allowed.

272.    By reason of the defendant's acts, the State of Indiana has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

273.    The State of Indiana is entitled to the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by defendant.

Count Twenty-One

Louisiana Medical Assistance Programs Integrity Law
La. Rev. Stat. §437.1 et. seq.

274.   Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

275.   This is a claim for treble damages and penalties under the Louisiana Medical Assistance Programs Integrity Law.

276.   By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the Louisiana State Government for payment or approval under Medicaid and other health programs.

277.   By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Louisiana State Government to approve and pay such false and fraudulent claims.

278.   The Louisiana State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that otherwise would not have been allowed.

279.   By reason of the defendant's acts, the State of Louisiana has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

280.   The State of Louisiana is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by defendant.

Count Twenty-Two

Michigan Medicaid False Claims Act
MCL 400.601-400.613

281.   Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

282.    This is a claim for treble damages and penalties under the Michigan Medicaid False Claims Act.

283.    By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the Michigan State Government for payment or approval under Medicaid and other health programs.

284.    By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Michigan State Government to approve and pay such false and fraudulent claims.

285.    The Michigan State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that otherwise would not have been allowed.

286.    By reason of the defendant's acts, the State of Michigan has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

287.    The State of Michigan is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by defendant.

### Count Twenty-Three

#### New York False Claims Act
#### N.Y. State Fin. §§ 187 et. seq.

288.    Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

289.    This is a claim for treble damages and penalties under the New York State False Claims Act.

290.    By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the New York State Government for payment or approval under Medicaid and other health programs.

291.   By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the New York State Government to approve and pay such false and fraudulent claims.

292.   The New York State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that otherwise would not have been allowed.

293.   By reason of the defendant's acts, the State of New York has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

294.   The State of New York is entitled to the maximum penalty of $12,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by defendant.

### Count Twenty-Four

**New Hampshire False Claims Act**
**N.H. Rev. Stat. Ann. §167:61-a, *et seq.***

295.   Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

296.   This is a claim for treble damages and penalties under the New Hampshire False Claims Act.

297.   By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the New Hampshire State Government for payment or approval under Medicaid and other health programs.

298.   By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the New Hampshire State Government to approve and pay such false and fraudulent claims.

299.   The New Hampshire State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that otherwise would not have been allowed.

300.   By reason of the defendant's acts, the State of New Hampshire has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

301.   The State of New Hampshire is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by defendant.

### Count Twenty-Five

### Oklahoma Medicaid False Claims Act
### 63 Okla. Stat. § 5053

302.   Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

303.   This is a claim for treble damages and penalties under the Oklahoma Medicaid False Claims Act.

304.   By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the Oklahoma State Government for payment or approval under Medicaid and other health programs.

305.   By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Oklahoma State Government to approve and pay such false and fraudulent claims.

306.   The Oklahoma State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that otherwise would not have been allowed.

307.   By reason of the defendant's acts, the State of Oklahoma has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

308.   The State of Oklahoma is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by defendant.

### Count Twenty-Six

### New Jersey False Claims Act
### N.J. Stat. § 2A: 32C-1 et seq.

309.   Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

310.   This is a claim for treble damages and penalties under the New Jersey False Claims Act.

311.   By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the New Jersey State Government for payment or approval under Medicaid and other health programs.

312.   By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the New Jersey State Government to approve and pay such false and fraudulent claims.

313.   The New Jersey State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that otherwise would not have been allowed.

314.   By reason of the defendant's acts, the State of New Jersey has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

315.   The State of New Jersey is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by defendant.

Count Twenty-Seven

Rhode Island False Claims Act
R.I. Gen. Laws § 9-1.1-1 *et seq.*

316.    Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

317.    This is a claim for treble damages and penalties under the Rhode Island False Claims Act.

318.    By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the Rhode Island State Government for payment or approval under Medicaid and other health programs.

319.    By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Rhode Island State Government to approve and pay such false and fraudulent claims.

320.    The Rhode Island State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that otherwise would not have been allowed.

321.    By reason of the defendant's acts, the State of Rhode Island has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

322.    The State of Rhode Island is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by defendant.

Count Twenty-Eight

Wisconsin False Claims For Medical Assistance Act
Wis. Stat §20.931 et seq.

323.    Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

324.    This is a claim for treble damages and penalties under the Wisconsin False Claims For Medical Assistance Act.

325.    By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the Wisconsin State Government for payment or approval under Medicaid and other health programs.

326.    By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Wisconsin State Government to approve and pay such false and fraudulent claims.

327.    The Wisconsin State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that otherwise would not have been allowed.

328.    By reason of the defendant's acts, the State of Wisconsin has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

329.    The State of Wisconsin is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by defendant.

## Count Twenty-Nine

### New York City False Claims Act
### New York City Administrative Code §7-801-§7-810

330.    Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

331.    This is a claim for treble damages and penalties against defendant on behalf of the City of New York under the New York City False Claims Act, New York City Administrative Code §7-801-§7-810.

332.   By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the New York City Government for payment or approval under Medicaid and other health programs.

333.   By virtue of the above-described acts, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the New York City Government to approve and pay such false and fraudulent claims.

334.   The New York City Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that otherwise would not have been allowed.

335.   By reason of the defendant's unlawful acts, the City of New York has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

## Count Thirty

### City of Chicago False Claims Act
### Municipal Code of Chicago §1-22-010-§1-22-060

336.   Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

337.   This is a claim for treble damages and penalties against defendant on behalf of the City of Chicago under the Chicago False Claims Act, Municipal Code of Chicago §1-22-010-§1-22-060.

338.   By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the City of Chicago for payment or approval under Medicaid and other health programs.

339.   By virtue of the above-described acts, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the City of Chicago to approve and pay such false and fraudulent claims.

4493828                                        53

340.    The Chicago City Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that otherwise would not have been allowed.

341.    By reason of the defendant's unlawful acts, the City of Chicago has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

## Count Thirty-One

### Connecticut False Claims Act
### Chapter 319v, Sec. 17b-301a *et seq.*

342.    Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

343.    This is a claim for treble damages and penalties under the Connecticut False Claims Act.

344.    By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the Connecticut Government for payment or approval under Medicaid and other health programs.

345.    By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Connecticut Government to approve and pay such false and fraudulent claims.

346.    The Connecticut Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that otherwise would not have been allowed.

347.    By reason of the defendant's acts, the State of Connecticut has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

348.    The State of Connecticut is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by defendant.

4493828

## Count Thirty-Two

### Montana False Claims Act
### Mont. Code Ann. § 17-8-401 *et seq.*

349.   Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

350.   This is a claim for treble damages and civil penalties under the Montana False Claims Act, Mont. Code Ann., § 17-8-401 *et seq.*

351.   The Montana False Claims Act, Mont. Code Ann., § 17-8-403 provides for liability for *inter alia* any person who engages in any or all of the following conduct.

    (a)   knowingly presenting or causing to be presented to an officer or employee of the governmental entity a false claim for payment or approval;

    (b)   knowingly making, using, or causing to be made or used a false record or statement to get a false claim paid or approved by the governmental entity;

    (c)   conspiring to defraud the governmental entity by getting a false claim allowed or paid by the governmental entity; . . .

    (h)   as a beneficiary of an inadvertent submission of a false claim to the governmental entity, subsequently discovering the falsity of the claim and failing to disclose the false claim to the governmental entity within a reasonable time after discovery of the false claim.

352.   By virtue of the conduct alleged herein, defendant knowingly violated the Montana False Claims Act by and through its intentional and/or knowing violations of federal and state laws, including the Anti-Kickback Statute, as described herein.

353.   The Montana Medicaid Program, unaware of the falsity or fraudulent nature of defendant's illegal conduct, paid and continues to pay the claims that otherwise would not have been allowed.

354.   By reason of these improper payments, the Montana Medicaid Program has been damaged, and continues to be damaged, in a substantial amount.

## Count Thirty-Three
### Colorado Medicaid False Claims Act
### Co. Rev. Stat. §25.5-4-303, *et seq.*

355.     Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

356.     This is a claim for treble damages and penalties under the Colorado Medicaid False Claims Act.

357.     By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the Colorado State Government for payment or approval.

358.     By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements material to false and fraudulent claims.

359.     By virtue of the acts described above, Defendant conspired with others to defraud Colorado by inducing the Colorado State Government to pay or approve false or fraudulent claims.

360.     The Colorado State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that otherwise would not have been allowed.

361.     By reason of the Defendant's acts, the State of Colorado has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

362.     The State of Colorado is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## Count Thirty-Four

### City of Philadelphia False Claims Provision
### Phil. Munic. Code § 19-3600 *et seq.*

363.   Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

364.   This is a claim for treble damages and civil penalties under the City of Philadelphia False Claims Provision, Phil. Code § 9-3600 *et seq.*

365.   City of Philadelphia False Claims Provision, Phil. Code § 19-3600 *et seq.* provides for liability for *inter alia* any person who engages in any or all of the following conduct:

> (1)   Knowingly presents or causes to be presented to an officer or employee of the City a false claim for payment or approval by the City;
>
> (2)   Knowingly makes, uses or causes to be made or used a false record or statement to get a false claim paid or approved by the City;
>
> (3)   Conspires to defraud the City by getting a false claim allowed or paid by the City.

366.   This is a claim for treble damages and penalties against defendant on behalf of the City of Philadelphia under the Philadelphia False Claims Provision, Municipal Code of Philadelphia § 19-3600 *et seq.*

367.   By virtue of the above-described acts, defendant knowingly made or caused to be made false claims to the City of Philadelphia under Medicaid and other health programs.

368.   By virtue of the above-described acts, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the City of Philadelphia to approve and pay such false and fraudulent claims.

369.    The Philadelphia City Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that otherwise would not have been allowed.

370.    By reason of the defendant's unlawful acts, the City of Philadelphia has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

371.    Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

372.    This is a claim for treble damages and penalties under the Colorado Medicaid False Claims Act.

373.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the Colorado State Government for payment or approval.

### Count Thirty-Five

Maryland False Health Claims Act of 2010
Maryland Code § 2-601 to 2-611
Subtitle 6. False Claims Against Maryland State Health Plans and State Health Programs

374.    Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

375.    This is a claim for treble damages and penalties under the Maryland State Health Plans and State Health Programs.

376.    Defendant has knowingly presented or caused to be presented to Maryland, or knowingly made, used or cause to be made or used false records and statements material to false and fraudulent claims, which Maryland has paid.

377.   Defendant has conspired with others to defraud the State of Maryland by inducing the Maryland Government to pay or approve false or fraudulent claims submitted to a State health plan or a State health program, which Maryland has paid.

378.   Unless the Defendant changes its behavior and ceases to engage in the  acts described above before October 1, 2010,  Defendant will continue to knowingly present or cause to be presented, or to knowingly make, use or cause to be  made or used false records and statements material to,  false and fraudulent claims to Maryland for payment.

379.   Unless the Defendant changes its behavior and ceases to engage in the acts described above before October 1, 2010, Defendant will continue to conspire with others to defraud the State of Maryland by submitting false or fraudulent claims to a Maryland State health plan or a State health program for payment.

380.   Unless the Defendant changes its behavior before October 1, 2010 and ceases to engage in the acts described above,  the Maryland State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant,  will pay and continue to pay  claims that otherwise would not be allowed

381.   Unless the Defendant changes its behavior and ceases to engage in the acts described above before October 1, 2010, the State of Maryland will be damaged in an amount to be determined at trial.

382.   After October 1, 2010, the State of Maryland will be entitled to in an amount equal to three times the amount of damages the State of Maryland will  sustain because of defendant's actions, plus a civil penalty of $10,000 for each for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant and for each and every other inducement and/or business practice that

are in violation of Annotated Code of Maryland Subtitle 6, False Claims Against State Health Plans and State Health Programs §2-602.

PRAYER

WHEREFORE, Relator prays for judgment

1.  that defendant ceases and desists from violating 31 U.S.C. §3729 et seq., and the equivalent provisions of the state statutes set forth above;

2.  that this Court enter judgment against defendant in an amount equal to three times the amount of damages the United States has sustained because of defendant's actions, plus a civil penalty of not less than $5,000 and not more than $11,000 for each violation of 31 U.S.C. §3729;

3.  that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of California has sustained because of defendant's actions, plus a civil penalty of $10,000 for each violation of Cal. Govt. Code §12651(a);

4.  that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of Connecticut has sustained because of defendant's actions, plus a civil penalty of $10,000 for each violation of the Connecticut False Claims Act, Chapter 319v, Sec. 17b-301a et seq.;

5.  that this Court enter judgment against Defendants in an amount equal to two times the amount of damages the State of Colorado has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of Co. Rev. Stat. §25.5-4-303, et seq.;

6.  that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of Delaware has sustained because of defendant's actions, plus a civil penalty of $11,000 for each violation of 6 Del. C. §1201(a);

7.      that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of Florida has sustained because of defendant's actions, plus a civil penalty of $11,000 for each violation of Fla. Stat. Ann. §68.082;

8.      that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of Hawaii has sustained because of defendant's actions, plus a civil penalty of $10,000 for each violation of Haw. Rev. Stat. §661-21and Haw. Rev. Stat. § 378-61, et seq.;

9.      that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of Illinois has sustained because of defendant's actions, plus a civil penalty of $10,000 for each violation of 740 Ill. Comp. Stat. §175/3(a);

10.      that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of Maryland will have sustained after October 1, 2010 because of the Defendant's actions, plus a civil penalty of $10,000 for each violation of the Annotated Code of Maryland Subtitle 6, False Claims Against State Health Plans and State Health Programs §2-601 to 2-611 that is committed by Defendant after October 1, 2010;

11.      that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of Massachusetts has sustained because of defendant's actions, plus a civil penalty of $10,000 for each violation of Mass. Gen. L. Ch. 12 §5A;

12.      that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of Minnesota has sustained because of defendant's actions, plus a civil penalty of $11,000 for each violation of Min. Stat. § 15C.01 et seq.

13.      that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of Nevada has sustained because of defendant's actions, plus a civil penalty of $10,000 for each violation of  Nev. Rev. Stat. Ann. §357.010 );

14.      that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of New Mexico has sustained because of defendant's

actions, plus civil penalties for each violation of N.M. Stat. Ann. §27-14-1 et seq. and N.M. Stat. Ann. §44-9-1 et seq.;

15.     that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of North Carolina has sustained because of defendant's actions plus a civil penalty of $11,000 for each violation of N.C. Gen. Stat. §§1-605 et seq.;

16.     that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of Tennessee has sustained because of defendant's actions, plus a civil penalty for each violation of Tenn. Code Ann. §71-5-182(a);

17.     that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of Texas has sustained because of defendant's actions, plus a civil penalty of $10,000 for each violation of Tex. Hum. Res. Code Ann. §36.002;

18.     that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of Virginia has sustained because of defendant's actions, plus a civil penalty of $10,000 for each violation of Va. Code Ann. §8.01-216.3(a);

19.     that this Court enter judgment against defendant in an amount equal to three times the amount of damages the District of Columbia has sustained because of defendant's actions, plus a civil penalty of $10,000 for each violation of D.C. Code Ann. § 2-308.14(a);

20.     that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of Georgia has sustained because of defendant's actions, plus a civil penalty of $11,000 for each violation of O.C.G.A §§ 49-4-168 et seq.;

21.     that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of Indiana has sustained because of defendant's actions, plus civil penalties for each violation of I.C. §5-11-5.5;

22.     that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of Louisiana has sustained because of defendant's actions, plus a civil penalty of $10,000 for each violation of La. Rev. Stat. §437.1 et. seq.;

23. that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of Michigan has sustained because of defendant's actions, plus a civil penalty of $10,000 for each violation of MCL 400.601 to 400.613.;

24. that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of New Hampshire has sustained because of defendant's actions, plus civil penalties for each violation of N.H. Rev. Stat. Ann. §167:61-a et seq.;

25. that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of New York has sustained because of defendant's actions, plus a civil penalty of $12,000 for each violation of N.Y. State Fin. §§ 187 et seq.;

26. that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of Oklahoma has sustained because of defendant's actions, plus a civil penalty of $10,000 for each violation of 63 Okla. Stat. § 5053;

27. that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of New Jersey has sustained because of defendant's actions, plus civil penalties for each violation of N.J. Stat. §2A:32C-1 et seq.;

28. that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of Rhode Island has sustained because of defendant's actions, plus civil penalties for each violation of R.I. Gen. Laws §9-1.1-1 et seq.;

29. that this Court enter judgment against defendant in an amount equal to three times the amount of damages Wisconsin has sustained because of defendant's actions, plus a civil penalty of $10,000 for each violation of the Wis. Stat. §20.931 et seq.;

30. that this court enter judgment against defendant in an amount equal to three times the amount of damages Montana has sustained because of the defendant's actions, plus a civil penalty of $10,000 for each violation of the Montana False Claims Act, Mont. Code Ann., § 17-8-401 et seq.;

31.     that by reason of the aforementioned violations of the New York City False Claims Act provisions that this Court enter judgment in Relator's favor and against defendant in an amount equal to not less than two times and not more than three times the amount of damages that the City of New York has sustained because of defendant's actions, plus a civil penalty of not less than $5,000 and not more than $15,000 for each violation of the New York City False Claims Act, New York City Administrative Code §7-801-§7-810;

32.     that by reason of the aforementioned violations of the Chicago False Claims Act provisions that this Court enter judgment in Relator's favor and against defendant in an amount equal to not less than two times and not more than three times the amount of damages that the City of Chicago has sustained because of defendant's actions, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of the Municipal Code of Chicago §1-22-010-§1-22-060;

33.     that by reason of the aforementioned violations of the Philadelphia False Claims Act provisions that this Court enter judgment in Relator's favor and against Defendants in an amount consistent with that allowed in the Act;

34.     that Relator be awarded the maximum amount allowed pursuant to §3730(d) of the federal False Claims Act, and the equivalent provisions of the state  statutes and statutes of the City of Chicago, the City of Philadelphia, and New York City set forth above;

35.     that Relator be awarded all costs of this action, including attorneys' fees and expenses; and

36.     that Relator recover such other relief as the Court deems just and proper, or that is necessary to make Relator whole.

### JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a jury trial.

Respectfully Submitted,

William J. Leonard
Richard P. Limburg
Mathieu J. Shapiro
Kimberly D. Sutton
OBERMAYER REBMANN MAXWELL & HIPPEL, LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103

Of Counsel:
Brian P. Kenney
KENNEY & McCAFFERTY, P.C.
3031 Walton Road, Suite C 202
Plymouth Meeting, PA 19462
*Attorneys for Relator James Judd, M.D.*

4493828